Sheldon E. Richie, Texas Bar No. 1687700
Admitted Pro Hac Vice
Katherine J. Walters, Texas Bar No. 00785174
Admitted Pro Hac Vice
Richie & Gueringer, P.C.
100 Congress Avenue, Suite 1750
Austin, Texas 78701
Telephone: 512-236-9220
Facsimile: 512-236-9230
Email: srichie@rg-austin.com, kwalters@rg-austin.com

Michelle Boutin, Alaska State Bar No. 8611097
Landye Bennett Blumstein, LLP
701 W. 8th Avenue, Suite 1100
Anchorage, Alaska 99501
Telephone: 907-868-9227
Facsimile: 907-276-8433
Email: michelleb@lbblawyers.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RAMBLER AIR, LLC ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| MONOCOQUE DIVERSIFIED ) | |
| INTERESTS, LLC ) | |
| ) | |
| Defendant ) | Case No. 3:21-cv-00235-JMK |

**DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

TO THE HONORABLE JUDGE OF SAID COURT:

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK                                    Page 1 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 1 of 15

COMES NOW, Monocoque Diversified Interests, LLC ("MDI") and files this its Original Answer to the Complaint filed by Rambler Air, LLC ("Rambler"), and in support thereof, would respectfully show:

1. Paragraph 1 of Rambler's Complaint does not require a response.

2. MDI lacks knowledge or information sufficient to form a belief about the truth of the averment in paragraph 2 of Rambler's Original Petition; therefore, deny.

3. Admit.

4. Paragraph 4 of Rambler's Complaint does not require a response.

5. MDI lacks knowledge or information sufficient to form a belief about the truth of the averment in the first sentence in paragraph 5 of Rambler's Original Petition; therefore deny. The second sentence of paragraph 5 of Rambler's Original Petition is a legal conclusion not requiring a response; therefore deny. MDI lacks knowledge or information sufficient to form a belief about the truth of the averments in the third and fourth sentences in paragraph 5 of Rambler's Original Petition; therefore deny. Sentence five of paragraph 5 is a legal conclusion which does not require a response; therefore deny.

6. MDI admits the first sentence of paragraph 6. The second sentence of paragraph 6 is a legal conclusion not requiring a response; therefore deny. MDI admits the third sentence of paragraph 6. MDI denies that Mr. Nadeau is a

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK                                    Page 2 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 2 of 15

Texas citizen but admits that Ms. Keyes is a Texas citizen as averred in sentence four of paragraph 6.

7. Paragraph 7 contains legal conclusions which do not require a response; therefore deny.

8. Paragraph 8 contains legal conclusions which do not require a response; therefore, deny.

9. Paragraph 9 contains legal conclusions which do not require a response; therefore, deny.

10. Paragraph 10 does not require a response.

11. MDI admits the allegations in paragraph 11.

12. MDI admits the allegations in the first sentence of paragraph 12. The second sentence of paragraph 12 contains legal conclusions which do not require a response; therefore, deny.

13. The first sentence of paragraph 13 contains a legal conclusion which does not require a response; therefore, deny. MDI admits the allegations in the second sentence of paragraph 13.

14. Paragraph 14 contains legal conclusions which do not require a response; therefore, deny.

15. MDI admits the allegations in paragraph 15.

16. MDI admits the allegations in paragraph 16.

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK                                                                 Page 3 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 3 of 15

RICHIE & GUERINGER, P.C.
100 CONGRESS AVENUE, SUITE 1750
AUSTIN, TEXAS 78701
TELEPHONE (512) 236-9220, FACSIMILE (512) 236-9230

17. MDI admits the allegations in paragraph 17.

18. MDI admits the allegations in paragraph 18.

19. MDI admits the allegations in paragraph 19.

20. MDI admits the allegations in paragraph 20.

21. MDI admits the allegations in the first sentence of paragraph 21. Rambler closed its business refusing to take technical acceptance of the aircraft.

22. MDI admits that it has not transferred $600,000.00 to Rambler as none is due as alleged in paragraph 22. The remaining part of paragraph 22 is a legal conclusion not requiring a response; therefore deny.

23. No response is required to paragraph 23.

24. MDI admits it was a party to the LOI and amendments as alleged in paragraph 24. The second sentence of paragraph 24 is a legal conclusion not requiring a response; therefore, deny.

25. Paragraph 25 is a legal conclusion not requiring a response; therefore, deny.

26. Paragraph 26 is a legal conclusion not requiring a response; therefore, deny.

27. Paragraph 27 is a legal conclusion not requiring a response; therefore, deny.

28. Paragraph 28 does not require a response.

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK                                                        Page 4 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 4 of 15

29. Paragraph 29 is a legal conclusion not requiring a response; therefore, deny.

30. MDI admits the allegations in sentence one of paragraph 30. Sentence two of paragraph 30 is a legal conclusion not requiring a response; therefore, deny.

31. Paragraph 31 is a legal conclusion not requiring a response; therefore, deny.

32. Paragraph 32 is a legal conclusion not requiring a response; therefore, deny.

33. Paragraph 33 does not require a response.

34. MDI admits that Rambler made payments to it as alleged in paragraph 34. The second sentence of paragraph 34 is a legal conclusion not requiring a response; therefore, deny.

35. MDI denies the allegations in paragraph 35.

36. Paragraph 36 is a legal conclusion not requiring a response; therefore deny.

37. Paragraph 37 is a legal conclusion not requiring a response; therefore, deny.

38. Paragraph 38 does not require a response.

RICHIE & GUERINGER, P.C.
100 CONGRESS AVENUE, SUITE 1750
AUSTIN, TEXAS 78701
TELEPHONE (512) 236-9220, FACSIMILE (512) 236-9230

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK    Page 5 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 5 of 15

39. Paragraph 39 is a legal conclusion not requiring a response; therefore, deny.

40. Paragraph 40 is a legal conclusion not requiring a response; therefore, deny.

41. Paragraph 41 is a legal conclusion not requiring a response; therefore, deny.

### AFFIRMATIVE DEFENSES

42. MDI asserts the affirmative defense of offset. Rambler owes MDI $12,000,000.00.

43. MDI asserts the affirmative defense of estoppel.

44. MDI asserts the affirmative defense of fraud and fraud in the inducement.

45. MDI asserts the affirmative defense of waiver.

### DEFENDANT'S COUNTERCLAIMS[1]

Monocoque Diversified Interests, LLC ("MDI") hereby files its Counterclaims against Rambler Air LLC ("Rambler") as follows:

//

//

---

[1] MDI expressly reserves the right to amend these counterclaims or to add additional counterclaims as they may appear during discovery.

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK                                   Page 6 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 6 of 15

RICHIE & GUERINGER, P.C.
100 CONGRESS AVENUE, SUITE 1750
AUSTIN, TEXAS 78701
TELEPHONE (512) 236-9220, FACSIMILE (512) 236-9230

## JURISDICTION AND VENUE

46. The Court has subject matter jurisdiction over MDI's counterclaims under 28 U.S.C. § 1332(a).

47. Events giving rise to these Counterclaims occurred in the District of Alaska and Texas. MDI denies venue is proper in this court; however, based upon the Court's prior rulings, venue is in this court.

## EVENTS COMMON TO ALL CAUSES OF ACTION

48. MDI is an aviation management company which provides, among other services, consulting services, management services, and equipment technical services to the aviation industry. Mary Alice Keyes and Leo Nadeau are the founders and equity partners of MDI. Mary Alice Keyes is a citizen of Texas and Leo Nadeau is a citizen of Alaska.

49. Rambler, USA Jet Airlines, Inc. ("USA Jet"), Arctic-on-Demand ("Arctic"), Roadrunner Transportation Systems, Inc. ("Roadrunner"), Ascent Global Logistics Holdings, Inc. ("Ascent") and Active Aero Group, Inc. ("Active Aero Group") worked in concert to damage MDI. MDI relied on the representations that it was a participant in the profits of Rambler and Arctic. Because of these representations, MDI performed services to benefit Rambler.

50. On or about November, 2018 MDI, working with representatives from Roadrunner, created the business plan based on Mr. Nadeau and Ms. Keyes' concept, for what would become Arctic On-Demand, incorporating the previously-discussed

RICHIE & GUERINGER, P.C.
100 CONGRESS AVENUE, SUITE 1750
AUSTIN, TEXAS 78701
TELEPHONE (512) 236-9220, FACSIMILE (512) 236-9230

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 7 of 15

ownership structure. However, that deal changed and Arctic refused to follow through on the deal, revising it to relegate MDI to a service provider, not a profit participant.

51. Arctic provides air charter services in Alaska. Arctic was ultimately formed as a spin-off company from Roadrunner, on or about August 2020. At all times relevant to the events giving rise to this case, Roadrunner controlled Arctic and Rambler.

52. MDI purchased the planes and improved the aircraft to Rambler's specifications in order to operate them in Alaska and then enter into lease to own contracts. The Rambler parties planned to use MDI as a financier opportunistically under the guise this was building a stronger bond around building the strategic venture once they knew MDI had bank financing available.

53. Mr. Nadeau was working at the Rambler office every day. His office was next to the company's Director of Operations. Mr. Nadeau vetted and hired all of the 119 employees employed by Rambler. Mr. Nadeau worked with Mr. Williams and developed the General Maintenance programs, the Pilot Training Programs, and the other items critical for the airline to receive FAA approval to operate. Part of Mr. Nadeau's job responsibilities was to assist in bridging the subject aircraft onto Rambler's certificate. MDI was a partner in this endeavor.

54. After an executive meeting with the top management of Ascent and Rambler where the parties determined that the B1900D aircraft was the correct plane to start the Rambler operations, MDI moved forward with the purchase. Ascent specifically directed MDI to purchase the aircraft for Rambler. This direction was

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK                                             Page 8 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 8 of 15

authorized by David Camdon, VP of Sales for Ascent, Luke Hickerson, Director of Operations for Rambler, Amy Swek, VP of Ascent's Alaska operations, Tom Breen, CFO of Ascent and Tom Stenglin, CEO of Ascent. The plan was that MDI would finance the purchase of the aircraft, modify them to Rambler's specifications and then enter into a lease to own contract with Rambler. In so doing, MDI was helping to build the airline and would share in the profits.

55. A problem arose. Because the ownership of Rambler included non-US citizens, Rambler could not obtain Department of Transportation certification to operate the aircraft as a passenger airline in Alaska. MDI was the only entity comprised of all US citizens. After MDI convinced the parties that there was no alternative, Rambler issued an ultimatum. MDI was to pay Ascent $6 million for equity in Rambler which was worth only $2 million. When MDI refused, the CEO of Roadrunner told MDI that they would shut the company down until MDI's agreement with the parties expired so as to not pay MDI the $12 million owed to MDI.

56. Following the collapse of the first contemplated transaction, representatives of Roadrunner began negotiations for MDI to source another airline to support Arctic On-Demand, with the stipulation that MDI forgo its equity partnership in the Alaska aviation logistics service. Instead, the parties created the concept that would eventually be implemented through a Master Services Agreement between MDI and Arctic and MDI and Rambler. Under the Master Services Agreement, the amounts to be paid to MDI for MDI's part in conceptualizing and implementing the Alaska plan

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK    Page 9 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 9 of 15

were to approximate the one-third profits originally contemplated by the parties in the original concept of the transaction. The Master Service Agreement includes an agreement that Rambler or Arctic would pay MDI $12,000,000.00 if the agreement was terminated or not renewed to replicate the promised profit participation. The Master Services Agreement was not only fully negotiated by the parties, but all parties were represented by well-known, capable attorneys of their own choice.

57. Eventually, Rambler and the other Roadrunner companies lost faith in the contemplated deal and worked to exclude MDI from further discussions about the concept originally developed by Mr. Nadeau and Ms. Keyes. Even so, MDI continued to perform its obligation by working to complete the collaboration that resulted in the formation of Arctic. MDI acquired three aircraft for the benefit of and at the request of Rambler and had those aircraft modified so that they could be flown in Alaska. The cost of those modifications was approximately $600,000.00, which MDI incurred and paid for the benefit of Rambler and/or its parent company.

58. The Master Services Agreement between MDI and Rambler contains a "Buy-Out Payment" provision, requiring it to pay MDI a cumulative payment of $12,000,000.00 for "termination" of the agreement without renewal.

59. After the Master Service Agreement between MDI and Rambler was signed, Mr. Nadeau received a telephone call from Tom Stenglein acting on behalf of Rambler and the other parties, who claimed that those Master Service Agreements were "too one-sided." His issue was with the buy-out clause that, if Rambler's parent

RICHIE & GUERINGER, P.C.
100 CONGRESS AVENUE, SUITE 1750
AUSTIN, TEXAS 78701
TELEPHONE (512) 236-9220, FACSIMILE (512) 236-9230

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK                                              Page 10 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 10 of 15

company sold the assets, then MDI would receive a $12,000,000.00 fee. The $12,000,000.00 "Buy-Out Payment" was originally calculated as the amount MDI was anticipated to generate from the five-year term of the contract and agreed to as a protection for MDI for an early contract "termination." Mr. Stenglein told Mr. Nadeau that they wanted to sell the whole company, but the buy-out provision was preventing the sale. MDI discussed converting the buy-out clause to an equity position in one of the Roadrunner companies, but Mr. Stenglein rejected that idea. Ultimately Mr. Stenglein told Mr. Nadeau that the intention was to "mothball" the company for five years and make it go dormant to avoid paying MDI the $12,000,000.00 fee.

60. In response to MDI's refusal to forego the $12,000,000.00 "Buy-Out Payment" under the Master Services Agreement, Rambler combined and conspired with other parties to effectively terminate the contract by shutting down all Alaska operations, transferring or selling the assets of Arctic and/or Rambler, and making spurious claims about MDI to people in the industry. All of Rambler's actions were done with the intent and purpose to tortiously interfere with MDI's contract rights under the Master Services Agreement by making it impossible for MDI to perform the services it agreed to provide, as no assets remain to be managed.

61. The Roadrunner companies conspired to assure non-payment of a fully negotiated benefit for work already performed, including but not limited to terminating all of the Arctic employees, but not directly terminating the contract with MDI, in an attempt to avoid its contract obligations. Now, there are no employees and no assets

RICHIE & GUERINGER, P.C.
100 CONGRESS AVENUE, SUITE 1750
AUSTIN, TEXAS 78701
TELEPHONE (512) 236-9220, FACSIMILE (512) 236-9230

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK                                      Page 11 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 11 of 15

owned by Rambler or Arctic for MDI to manage. MDI's agreements with Rambler and Arctic have been *effectively terminated.* Rambler took all of these actions that tortiously interfere with MDI's contracts to deprive MDI of its $12,000,000.00 "Buy-Out Payment" and to deprive MDI of its opportunity to perform its obligations under the Master Service Agreements.

62. MDI performed every one of its obligations under the Master Services Agreements. In contrast, Rambler and Arctic breached the parties' agreements, triggered the "Buy-Out Payments" due to MDI, refused to comply with their obligations under the Master Services and Consulting Agreements, and left MDI no choice but to seek the Court's intervention.

### FIRST COUNTERCLAIM CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH CONTRACT RIGHTS

63. MDI hereby incorporates the foregoing paragraphs herein to the extent necessary to support this cause of action.

64. All of the Roadrunner companies were aware of the contracts between MDI and the other affiliated companies of Roadrunner, including the contract between MDI and Rambler, as well as the $12,000,000.00 "Buy-Out Payment" obligation. Rambler interfered with the contract rights of MDI, to deprive MDI of the benefits of those contracts and to enrich Rambler or its parent company, effectively constructively terminating the contract with Rambler and triggering the "Buy-Out Payment" thereunder, and then refusing to honor their commitment.

RICHIE & GUERINGER, P.C.
100 CONGRESS AVENUE, SUITE 1750
AUSTIN, TEXAS 78701
TELEPHONE (512) 236-9220, FACSIMILE (512) 236-9230

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK                                     Page 12 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 12 of 15

65. MDI has been damaged by the tortious interference with its contract rights by the Defendants, in the minimum amount of $12,000,000.00.

### SECOND COUNTERCLAIM CAUSE OF ACTION: CONSPIRACY

66. MDI hereby incorporates the foregoing paragraphs herein to the extent necessary to support this cause of action.

67. Rambler's actions in concert with Arctic, USA Jet, Roadrunner and Ascent constitute civil conspiracy. As noted by the discussions between Mr. Nadeau and various employees and representatives of Rambler and its parent company, Rambler and the other Roadrunner companies were at all times working with other, unnamed entities, first to create the deal, then to take advantage of MDI. When MDI refused to capitulate, Rambler was complicit in the development of a scheme to close the Alaska operation in a manner to avoid triggering the buy-out due to MDI.

68. MDI has been damaged by the conspiracy between these entities, in the minimum amount of $12,000,000.00.

### THIRD COUNTERCLAIM CAUSE OF ACTION: QUANTUM MERUIT

69. MDI hereby incorporates the foregoing paragraphs herein to the extent necessary to support this cause of action.

70. MDI performed services that benefitted all of the Roadrunner parties. Rambler, Arctic and the other Roadrunner companies accepted MDI's services and benefitted from them. At the time the services were performed, the Roadrunner

RICHIE & GUERINGER, P.C.
100 CONGRESS AVENUE, SUITE 1750
AUSTIN, TEXAS 78701
TELEPHONE (512) 236-9220, FACSIMILE (512) 236-9230

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK                                                    Page 13 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 13 of 15

companies knew that MDI expected compensation for its services. MDI seeks recovery of the reasonable value of its services, $12,000,000.00.

## ATTORNEYS' FEES

71. Pursuant to Rule 82, MDI seeks recovery of its reasonable and necessary attorneys' fees and costs of court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Monocoque Diversified Interests, LLC prays that, at the trial on the merits, Rambler take nothing, and MDI have all relief requested herein, and for all other relief to which MDI may be entitled, in equity or at law.

Dated: March 14, 2022, in Austin, Texas.

Respectfully submitted,

RICHIE & GUERINGER, P.C.

By: /s/ Katherine Walters
Sheldon E. Richie
Admitted pro hac vice
Texas State Bar No. 16877000
srichie@rg-austin.com
Katherine J. Walters
Admitted pro hac vice
Texas State Bar No. 00785174
kwalters@rg-austin.com

Michelle Boutin
Landye Bennett Blumstein, LLP
701 W. 8th Avenue, Suite 1100
Anchorage, Alaska 99501
Ph: 907-868-9227
Fax: 907-276-8433

RICHIE & GUERINGER, P.C.
100 CONGRESS AVENUE, SUITE 1750
AUSTIN, TEXAS 78701
TELEPHONE (512) 236-9220, FACSIMILE (512) 236-9230

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK                          Page 14 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 14 of 15

Alaska State Bar No. 8611097
michelleb@lbblawyers.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 14, 2022, a true and correct copy of the foregoing was served by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

**Attorneys for Plaintiff Rambler Air, LLC**

Rebecca A. Lindemann (rlindemann@richmondquinn.com)
Richmond & Quinn
360 K Street, Suite 200
Anchorage, Alaska 99501

Dieter J. Juedes (dieter.juedes@huschblackwell.com)
Eduardo E. Castro (Eduardo.castro@huschblackwell.com)
Husch Blackwell, LLP
511 North Broadway, Suite 1100
Milwaukee, Wisconsin 53202

_____
Dana Cupp, Legal Assistant
Landye Bennett Blumstein LLP

RICHIE & GUERINGER, P.C.
100 CONGRESS AVENUE, SUITE 1750
AUSTIN, TEXAS 78701
TELEPHONE (512) 236-9220, FACSIMILE (512) 236-9230

DEFENDANT'S ORIGINAL ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
*Rambler Air, LLC v. Monocoque Diversified Interests, LLC*
Case No. 3:21-cv-00235-JMK                                                      Page 15 of 15

Case 3:21-cv-00235-JMK   Document 36   Filed 03/14/22   Page 15 of 15